[No. 20660.   In Bank. — June 7, 1890.]

EX PARTE ·JAMES W. KEENEY, ON HABEAS CORPUS.

CONSTITUTIONAL LAW — POLICE POWER — SANITARY REGULATION OF CITY
AND COUNTY — CONFLICT WITH GENERAL LAWS. — Under section 11 of
article 11 of the constitution (which is applicable to consolidated cities
and counties by section 7 of the same article), the city and county of
San Francisco can only make such sanitary regulations as are not in con-
flict with general laws; and all sanitary provisions conflicting with such
laws are unauthorized and void.

ID. — MUNICIPAL ORDER REGULATING DEATH CERTIFICATES AND PERMITS
FOR INTERMENTS — CONFLICT WITH POLITICAL CODE. — Order No. 2162
of the board of supervisors of the city and county of San Francisco, regu-
lating the granting of certificates of death and the issuance of permits for
interments, and punishing the health officer as for a misdemeanor upon
non-compliance therewith, is unconstitutional and void, as being in con-
flict with the provisions of the Political Code relating to the same sub-
ject, and punishing the health officer for doing what the general law of
the state not only authorizes but requires him to do.

ID. — HABEAS CORPUS — PUNISHMENT UNDER VOID MUNICIPAL ORDINANCE.
— A person subjected to punishment for violation of an unconstitutional
municipal ordinance will be released upon writ of *habeas corpus.*

APPLICATION for a writ of *habeas corpus.*   The facts are
stated in the opinion of the court.

*Curtis H. Lindley,* and *Henry Eickhoff,* for Petitioner.

*Spencer & McEnerney,* for Respondent.

Fox, J. — Petitioner, who is health officer of the city
and county of San Francisco, is arrested and held under
a warrant issued out of the police court of said city and
county, upon a complaint charging him with misde-
meanor, for that he, "as such health officer, did grant
and issue a permit to deposit the body of said Ah Tin in
the city cemetery, in said city and county of San Fran-
cisco, and to inter said body in said city and county,
without requiring, receiving or obtaining, or filing, and
without the issuance of the certificate of the death of
said Ah Tin, signed or issued by an attending physician,
or by the coroner of said city and county of San Fran-

cisco, or by a physician authorized by the coroner to grant a certificate of death, thereby violating the provisions of order No. 2162 of the board of supervisors of the city and county of San Francisco."

Order No. 2162 referred to is entitled as an order "regulating the granting of certificates of death and the issuance of permits for interments." It provides that no person shall deposit in any cemetery, or inter in said city and county, any human body, without first having obtained and filed with the health officer a certificate of death signed by a legally qualified attending physician, nor without having obtained from said health officer a permit to deposit or inter said human body; that if there be no attending physician, or he be absent, such certificate may be issued by the coroner, or by a physician authorized by the coroner to grant such certificates; that in case of death in maternity homes, lying-in hospitals, or other similar institutions, the certificate shall be issued only by the coroner, or a physician authorized by him to grant certificates of death; that no permit to deposit or inter shall be granted or issued by the health officer until he shall have received the certificate of death required by the order, and that any violation of the provisions of the order shall constitute a misdemeanor, punishable by fine of not more than five hundred dollars, or by imprisonment not more than six months, or by both such fine and imprisonment.

On the part of the people it is claimed that the passage and enforcement of such an order is fully authorized by article 11, section 11, of the constitution, which reads: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

(Although "cities and counties" are not mentioned in this section, this and all other provisions of the constitution *not inconsistent or prohibited to cities* are made

applicable to consolidated cities and counties by section 7 of the same article.)

On the part of the petitioner it is claimed that the provisions of this order are in conflict with the provisions of sections 3012, 3025, and 3084 of the Political Code, and of section 377 of the Penal Code, all of which are general laws, and that in so far as the provisions of the order do conflict with these general laws, they are unauthorized and void. That they are unauthorized and void, if such conflict exists, cannot be doubted.

All these sections of the Political Code are found in title 7 of part 3. That title is in relation to the "general police of the state." Chapter 2 of the title relates to "preservation of the public health," and article 3 of that chapter relates to "health and quarantine regulations for the city and harbor of San Francisco." This article consists of sections 3004 to and including 3035. Section 3005 provides for a board of health for the city and county of San Francisco, to consist of the mayor, and of four physicians, to be appointed by the governor, to hold office for five years. Section 3007 provides for the appointment, by the board, of a health officer, and section 3008 makes him the executive officer of the health department. Section 3012 reads as follows: "The board of health have general supervision of all matters appertaining to the sanitary condition of the city and county, including the city and county hospital, the county jail, alms-house, industrial school, and all public health institutions provided by the city and county of San Francisco; and may adopt such orders and regulations, and appoint or discharge such medical attendants and employees as to them seems best to promote the public welfare; and may appoint as many health inspectors as they deem necessary in time of epidemics."

So much of section 3025 as needs to be considered here reads as follows: "No person shall deposit in any cemetery or inter in the city and county of San Fran-

cisco any human body without first having obtained
and filed with the health officer a certificate, signed by
a physician or midwife, or a coroner, setting forth, as
near as possible, the name, age, color, sex, place of birth,
occupation, date, locality, and the cause of death of
the deceased, and obtain from such health officer a per-
mit; nor shall any human body be removed or disin-
terred without the permit of the health officer or by
order of the coroner."

It is very clear that by this article the legislature has
undertaken, as a part of the provisions of the general
law "relating to the public health," and through a local
department of the state government, to wit, a board of
health for the city and county of San Francisco, all of
the members of which, except the mayor of the city and
county, are appointed by the governor, to manage and
control certain — we do not say all, but certain — of the
sanitary regulations of the city and county and contigu-
ous harbor of San Francisco, and by section 3025 has
particularly undertaken to manage and control the condi-
tion and terms upon which permits for the interment of
human bodies within said city and county may be
issued, and by whom.

So much of section 3005 as prescribed the term of five
years for the officers of the board appointed by the gov-
ernor has been declared to be unconstitutional. (*People
v. Perry*, 79 Cal. 105.) But it was expressly held that
this did not affect the validity of the balance of the act.

It follows that any order or ordinance, or provision of
any order or ordinance, of the municipality which con-
flicts with the provisions of this general law is prohibited
and forbidden to the municipality, — is unauthorized and
void. Is there a conflict between the provisions of this
order and of the general law? We think so. The order
punishes the health officer as for misdemeanor if he is-
sues a burial permit upon the certificate of any person
other than a legally qualified attending physician, *except*

that if there was no legally qualified attending physician, or if there was such, and he be absent (thus making it the duty of the health officer at his peril to ascertain and determine these facts before he can accept any other certificate), he may accept the certificate of the coroner, or of a physician authorized by the coroner, in writing, to grant such certificates, and with the one further exception, that, if the death occur in a maternity home, lying-in hospital, or other similar institution, and no matter whether the death be of a patient or of a servant, a stranger who has happened to call, a male or a female, he must ignore even the "legally qualified attending physician," and all other persons licensed by the state to issue certificates of death, and issue his permit *only* on the certificate of the coroner, or of a physician authorized by that officer to issue such certificates. Section 3025 in express terms authorizes, and by necessary implication makes it his duty, to issue such permit upon the certificate of a physician, a midwife, or a coroner. He has no right, under the general law, to force a party seeking a permit to hunt up some favorite of the coroner, to get such a certificate, or to refuse the certificate of a physician or a midwife, whether such physician holds the license of the coroner or not. The order, therefore, punishes him for doing what the general law not only authorizes but requires him to do. It is no answer to this to say that the object of the order is to shut out the certificates of impostors and dishonest persons practicing as physicians and midwifes. To be eligible to the place, the health officer must himself be a graduate of a medical college in good standing residing within the limits of the city. He is the executive officer of an important department of the state government, bound to know, and in his department to execute, the law. Under the law, no person is entitled to practice medicine, or to be recognized by the officers of the law as a physician, unless licensed as such by the state. It is the duty of the

health officer to know, and the law presumes that he does know, and that he acts upon that knowledge, whether a person who issues a death certificate presented to him is a physician or not.

The law also recognizes the fact that there is a profession called midwife, and imposes upon midwives certain duties, both as to deaths and to births. (Pol. Code, secs. 3024, 3075.) It has not only granted to them the right to issue death certificates (sec. 3025), but it compels them to report deaths to the health officer in San Francisco (sec. 3024), to keep a registry of births and deaths occurring in their practice (sec. 3075), and to report the same to the county recorder (sec. 3077). (The last requirement possibly does not apply in San Francisco, where they are required to make such report to the health officer, and he to file their reports in the office of the county recorder.) If ample provision is not already made to protect the public against impostors in that profession, no doubt it may be done in that as in the other. But so long as the general law recognizes it as a legitimate profession or calling, and authorizes the health officer to grant burial permits on midwives' certificates of death, he cannot be punished as for a crime for so granting them.

Section 3084 of the Political Code is a part of chapter 3 of title 7, above referred to,—a different chapter from that to which the article belongs which we have been considering. That chapter relates to the "registry of births, marriages, and deaths," and generally, as to its provisions, has no application to the city and county of San Francisco. It is claimed on the part of the people that the section referred to, like the balance of the chapter, has no application to this municipality. Without finally deciding that question, for we do not deem it necessary to decide it in this case, it is sufficient to say that if it does apply to this city and county, the order is in conflict with its provisions equally with those of section 3025.

But it is also claimed that if section 3084 does not apply to San Francisco, then there is no law for punishing the health officer for issuing a burial permit without the proper certificate, and an ordinance prescribing a punishment for that act is not unauthorized. This contention is based upon the fact that section 377 of the Penal Code as amended in 1889 provides a punishment only for violations of the provisions of chapter 3, title 7, of the Political Code, and that section 3084 is the only one of the sections with which it is claimed that the order conflicts which belongs to that chapter. It is true that in amending the section in 1889 the legislature has so changed the form of section 377 of the Penal Code as to make it apply only to violations of the provisions of chapter 3 of the title of the Political Code referred to. But we cannot concede that this change has left the state without a law for the punishment of this officer for misfeasance or malfeasance in office. Under any reasonable construction of the general law, it is his duty, before he issues his permit, to demand, receive, and file the proper certificate of death prescribed by the statute. Upon its receipt it is equally his duty to issue the permit. For a violation of his duty in either of these respects, he is liable to be proceeded against for removal from office under the proper statutes, and is punishable for misdemeanor under section 378 of the Penal Code; or in the absence of that section, he would be equally punishable under section 176 of the same code.

Holding, as we do, that the order, in so far as it attempts to punish the health officer for granting permits upon certificates authorized by general law, is in conflict with the general law, and void, it follows that the complaint, which is based on the order alone, fails to state facts constituting a public offense, and the prisoner must be discharged.

So ordered.

McFarland, J., Paterson, J., Sharpstein, J., and Works, J., concurred.